**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CHELSEA REID                                             CIVIL ACTION

VERSUS                                                        No. 23-7201

CAFE HABANA NOLA, LLC                                      SECTION I

<u>**ORDER & REASONS**</u>

Before the Court is a motion[1] to compel arbitration and to dismiss the above-captioned matter or, alternatively, stay these proceedings pending arbitration. The motion was filed by defendant Cafe Habana Nola, LLC d/b/a Habana Outpost New Orleans ("defendant"). Plaintiff Chelsea Reid ("plaintiff") opposes[2] the motion. Defendant filed a reply.[3] For the reasons set forth below, the Court denies the motion.

## I.   FACTUAL BACKGROUND

Plaintiff alleges the following facts. Defendant is a restaurant company that hired plaintiff to work as a barista.[4] Defendant expressed interest in having plaintiff join its leadership team.[5] On November 5, 2022, plaintiff met with Sean Meenan, the owner, and Nate Sanders ("Sanders"), the general manager, to discuss her potential leadership role.[6] Sanders asked plaintiff to propose a salary.[7] Plaintiff's initial

---

[1] R. Doc. No. 6.
[2] R. Doc. No. 10.
[3] R. Doc. No. 12.
[4] R. Doc. No. 1 (complaint), ¶¶ 8, 10–11; R. Doc. 10-1 (plaintiff's declaration), ¶ 2.
[5] R. Doc. No. 1, ¶ 10.
[6] *Id.* ¶¶ 12–16.
[7] *Id.* ¶ 17.

proposal was an annual salary of $60,000, but Sanders rejected that offer.[8] Ultimately, plaintiff agreed to a weekly salary of $1,000 with commission incentives for the role of "Assistant Manager/Community Liaison."[9]

On November 6, 2022, plaintiff viewed a job posting on defendant's website.[10] The website advertised an open Assistant Manager position with a salary range of $60,000 to $80,000.[11] On the date plaintiff viewed the job posting, defendant's "Join Our Team" web page contained an online form and stated: "By submitting this application you acknowledge that you have carefully read all of **this Agreement** and agree that all of the restrictions set forth are fair and reasonable for all parties."[12] The words "this Agreement" hyperlink to a separate page, which contains an untitled putative arbitration agreement (the "Arbitration Provision").[13]

After seeing the job posting, plaintiff emailed Sanders and asked to renegotiate her own starting salary to $60,000.[14] It is undisputed that plaintiff never submitted a job application to defendant through the online form.[15] Sanders's email response

---

[8] *Id.* ¶ 18.

[9] *Id.* ¶¶ 16, 18.

[10] *Id.* ¶ 19.

[11] *Id.*

[12] R. Doc. No. 6-2 (declaration of Maxwell Gaudin, defendant's website manager), ¶¶ 6–7; *see also id.* at 4 (screenshot of the "Join Our Team" web page); *id.* at 5 (screenshot of the listed positions).

[13] *Id.* ¶ 9; *see also id.* at 6 (screenshot of the arbitration agreement).

[14] R. Doc. No. 1, ¶ 19.

[15] Rather, plaintiff's negotiations and acceptance pertaining to her original position as a barista occurred through other means, including text message. R. Doc. No. 10-1, ¶ 2. Plaintiff also did not submit any online job application pertaining to the Assistant Manager/Community Liaison position. *Id.* ¶ 5.

rescinded the offer of a leadership role and terminated plaintiff's employment.[16] The employee who had hired plaintiff, Kyle Nicholson, advised plaintiff that the termination was because of race.[17]

Plaintiff then filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination, which is attached to her complaint.[18] On September 7, 2023, plaintiff received a "right to sue" letter from the EEOC.[19] On December 6, 2023, plaintiff filed the instant lawsuit.[20]

Defendant now moves to compel arbitration, arguing that plaintiff is bound by the arbitration agreement that was posted on defendant's website.[21] Specifically, defendant asserts that, by viewing the "Assistant Manager" position on defendant's website, which also contained the hyperlinked Arbitration Provision and then using that job posting "to apply and negotiate for employment with a higher title and salary[,]" plaintiff bound herself to the terms of the Arbitration Provision.[22]

To be clear, defendant does not contend that its employment contract for plaintiff's barista position contained an arbitration provision.[23] And defendant does not suggest that plaintiff's original agreement with respect to the Assistant Manager/Community Liaison position involved an agreement to arbitrate.[24] Instead,

---

[16] *Id.* ¶ 20.
[17] *Id.* ¶ 21.
[18] R. Doc. No. 1-2.
[19] R. Doc. No. 1-3.
[20] *See* R. Doc. No. 1.
[21] R. Doc. No. 6-1, at 3–4.
[22] *Id.* at 6.
[23] *See* R. Doc. Nos. 6-1, 12.
[24] *See id.*

defendant focuses on the terms of employment for the Assistant Manager position—the position plaintiff came across in her salary research after accepting the Assistant Manager/Community Liaison position.[25]

Defendant speculates that plaintiff may have clicked on the "this Agreement" hyperlink when viewing that job posting.[26] Defendant further suggests that, even if defendant did not click on the hyperlink, she "should not have missed it."[27] Yet defendant does not suggest that plaintiff submitted the online application for the Assistant Manager Position. Thus, defendant argues that plaintiff bound herself to arbitrate solely by viewing the online job opening in connection with her salary research. The law does not support this argument.

## II.    LAW & ANALYSIS

### a. Choice of Law

"Enforcement of an arbitration agreement involves two analytical steps: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that agreement." *Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233, 235 (5th Cir. 2021) (quoting *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018)). "Determining whether a valid arbitration agreement exists is a question of state contract law." *Id.* (citing *Huckaba*, 892 F.3d at 688). "Although there is a strong federal policy favoring arbitration, this federal policy favoring arbitration does not

---

[25] *See* R. Doc. No. 6-1, at 5–6.
[26] *See id.* at 6 ("Under the circumstances, no one would have missed the clear notice of assent to arbitration tied to the use of the job descriptions via the hyperlinked Arbitration Agreement.").
[27] *Id.*

apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Moran v. Ceiling Fans Direct, Inc.*, 239 F. App'x 931, 936 (5th Cir. 2007) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)).

As noted, state law governs whether an arbitration agreement exists. *See Trujillo*, 846 F. App'x at 235. Defendant's brief relies almost exclusively on Texas law.[28] Defendant's assumption that Texas law applies appears to hinge on the Arbitration Provision's statement that "the Agreement shall be construed, and the rights and obligations hereunder shall be determined in accordance with the laws of the State of Texas."[29] Defendant therefore presupposes that plaintiff is bound by the Arbitration Provision to justify the conclusion that Texas law governs the determination of that issue. That logic is circular. Rather than rely on a contested choice of law agreement, the litigation forum's choice of law rules apply to the determination of whether an agreement exists in the first instance. *See, e.g.*, *Urda v. Valmont Indus. Inc.*, 561 F. Supp. 3d 640, 649 (M.D. La. 2021) ("As a preliminary matter, the Court must first determine whether a valid and enforceable agreement exists, by application of Louisiana law, before it can enforce the choice-of-law provision in the rental agreement, and apply Washington law.").

Federal common law choice-of-law rules apply to federal question cases like this one. *See Jackson Nat'l Life Ins. Co. v. Dobbins*, 761 F. App'x 389, 392 (5th Cir. 2019) (citing *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 351 (5th Cir. 2016)).

---

[28] *See id.* at 8–11.
[29] *See* R. Doc. No. 6-2, at 6.

Under federal common law, "the [C]ourt must determine which state has the 'most significant relationship to the transaction and the parties.'" *Id.* (quoting Restatement (Second) of Conflicts of Laws § 188 (Am. Law Inst. 1971)). Louisiana has the most significant relationship to this dispute. Plaintiff was employed in Louisiana and the conduct described in the complaint took place in Louisiana. There is no indication of any nexus to Texas beyond the Arbitration Provision. Louisiana law, therefore, governs whether a valid arbitration agreement exists.

### b.  Existence of a Valid Agreement

The party seeking to enforce an arbitration provision has the burden to show a contract exists. *See Trujillo*, 846 F. App'x at 236 ("An employer moving to compel arbitration bears the burden of showing that the proffered agreement is valid.").[30] The dispute over arbitration here centers on consent.

Consent is "foundational" to arbitration. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). "[P]arties cannot be coerced into arbitrating a claim, issue, or dispute absent an affirmative contractual basis for concluding that the party *agreed* to do so." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 660

---

[30] Defendant argues that the policy favoring arbitration applies at this stage and the burden is on the party challenging the agreement to show its invalidity. *See* R. Doc. No. 6-1, at 4 (citing *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 297 (5th Cir. 2004). However, defendant conflates the threshold question of whether an arbitration agreement exists with the separate question of whether the scope of the agreement extends to a particular dispute. *See Huckaba*, 892 F.3d at 688–89; *id.* at 689 n.1 (explaining that, "because the validity of the [arbitration agreement] is a matter of contract, at this stage, the strong federal policy favoring arbitration does not apply" and noting that the district court had erred in quoting *Carter* for the application of the policy favoring arbitration "at this stage").

(2022) (cleaned up); *see also Moran*, 239 F. App'x at 936 ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (cleaned up).

Defendant contends that, by viewing the salary range for the Assistant Manager position on defendant's website and then using that posted salary range to renegotiate her own starting salary, plaintiff "received notice that seeking to use the Assistant General Manager job posting to apply and negotiate for employment with a higher title and salary would subject her to the Arbitration Agreement[.]"[31] Defendant also asserts that plaintiff "accepted the terms" of the Arbitration Provision "when she applied and negotiated for employment with a higher title and salary after viewing the Assistant General Manager job posting."[32]

On November 6, 2022, defendant's "Join Our Team" web page stated that "*[b]y submitting this application*"—namely, the online job application form that appears on defendant's "Join Our Team" web page—a prospective employee consented to a hyperlinked "Agreement."[33] Yet defendant now argues that *potentially viewing* a hyperlink to the Arbitration Provision and then using information learned on the website in salary negotiations without submitting an online application is equivalent to consent.[34]

---

[31] R. Doc. No. 6-1, at 5–6.
[32] *Id.* at 6.
[33] R. Doc. No. 6-2, at 5 (emphasis added); *id.* at 4.
[34] *See* R. Doc. No. 6-1, at 5–6. It is unclear whether plaintiff in fact viewed the hyperlink or its contents. However, whether or not she did so is immaterial given the absence of any manifestation of consent.

Pursuant to Louisiana law, "[a] contract is formed by the consent of the parties established through offer and acceptance." La. Civ. Code art. 1927. "[O]ffer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." *Id.* "When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form." *Id.* art. 1947. The Arbitration Provision contemplates that a potential employee will consent to arbitration by submitting an online job application. It is undisputed that plaintiff did not submit an online application. This is reason enough to deny the motion.

Further, nothing in the jurisprudence on website arbitration agreements suggests that a plaintiff manifests consent merely by viewing a hyperlink and later using information learned through the web page containing the hyperlink to renegotiate her salary. Courts have enforced some "clickwrap" agreements, which require a user to click a button assenting to terms before being allowed to proceed. *See Hughes v. Uber Techs., Inc.*, No. CV 23-1775, 2024 WL 707686, at *4 n.36 (E.D. La. Feb. 21, 2024) (Vance, J.). This is not a clickwrap case, however, because nothing suggests that plaintiff ever clicked a button accepting the Arbitration Provision.

Courts have also enforced some "browsewrap" agreements, which notify users that by using a website application they are agreeing to certain terms. *See Sw. Airlines Co. v. BoardFirst, LLC*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *5 (N.D. Tex. Sept. 12, 2007) ("Where a website fails to provide adequate notice of the terms, and there is no showing of actual or constructive knowledge, browsewraps have been

found unenforceable."); *DHI Grp., Inc. v. Kent*, No. 21-20274, 2022 WL 3755782, at *5 (5th Cir. Aug. 30, 2022) ("Importantly, 'the validity of a browsewrap license turns on whether a website user has actual or constructive knowledge of a site's terms and conditions *prior to using the site.*'") (emphasis added) (quoting *BoardFirst*, 2007 WL 4823761, at *5). This is not a browsewrap case, however, because plaintiff did not proceed to use the online job application form.

As explained, there was no manifestation of consent after plaintiff potentially viewed the hyperlink. The Court will therefore deny defendant's motion to compel arbitration. Likewise, the Court will also deny defendant's motion to dismiss the complaint or, alternatively, stay these proceedings pending arbitration since that motion is predicated on defendant's motion to compel arbitration.

### III.   CONCLUSION

Accordingly,

**IT IS ORDERED** that defendant's motion to compel arbitration is **DENIED**.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss the complaint or, alternatively, stay these proceedings pending arbitration is **DENIED**.

New Orleans, Louisiana, May 7, 2024.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**